# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Crim No. 1.12-cr-00188-JAW |
| | ) | |
| ANDREW ZARAUSKAS | ) | |

## MOTION FOR NEW TRIAL

NOW COMES, undersigned counsel, Stephen C. Smith, Esq., as counsel for the above named Defendant and hereby moves for a new trial in the above referenced matter on the following grounds:

    a. Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

F.R.Crim.P. 33.

The Government unfairly commented on the Defendant's right to remain silent. Repeatedly throughout the trial Government attorneys referred to Defendant's silence.

> And as we got into the narwhal topics, he went from being
> open to more of a closed position and to sitting way back in
> his chair and tensing up with his hands, and I could see his
> -- his breathing go rapid and shallow, and he began grooming

his face, and at the same time, he began to have sweat bead up on his forehead until it started to run down the side of his head -- face.

Q During the interview, was the temperature uncomfortable inside the Café Vivaldi?

A No, it wasn't.

Q During the interview, did the defendant ever say anything like you're accusing me of something I didn't do here?

A No, he didn't.

Q Did he ever raise his voice at you?

A He did not.

Q Did he ever get mad at you or say that you misunderstood what happened?

A No.

Q Now, near the end --

MR. SMITH: Objection, Your Honor.

BY MR. NELSON:

Q -- of the --

THE COURT: Wait.

MR. SMITH: Might we approach?

THE COURT: Yes.

(At sidebar on the record.)

MR. SMITH: Your Honor, I think the government has just by its questioning in a fairly unusual fashion, but fairly directly has shifted the burden to Mr. Zarauskas, that he should have somehow come up and denied the case or denied the accusations. I think he's -- I think the government has put the burden on him at that moment with that form of question, and I object.

THE COURT: I think it's very clear that I've told

them repeatedly that the burden is solely on the government
and not on the defendant. I'll reiterate that during the
course of the final instructions.
But what he's done here is simply say, which would be a
natural reaction, did he ever say -- well, the -- I'm going to
overrule the objection.
(End of discussion at sidebar.)

Trial Transcript, Vol. II, P. 114-115

> Q Special Agent Guidera, near the end of the interview,
> you and the defendant were discussing the possibility of
> looking at things that were currently in his home. Do you
> remember that?
> A I do.
> Q Okay. Did you ultimately go to the defendant's home?
> A Yes, we did.
> Q And I want to ask you a preface question because it's
> important. At the end of the tape, the defendant said
> something along the lines of it might be in my best interests
> to get an attorney. At that point, did he say that he was
> calling an attorney or wanted to talk to an attorney before it
> went any further?
> A No, he did not.

Trial Transcript, Vol. II, Page 116.

> It strikes me that when asked by federal agents to be
> interviewed, a person really has three choices: You can say
> no, thank you, I'd rather not talk; you can agree to be
> interviewed and tell the truth; you can agree to be
> interviewed and spin a web of inconsistent statements. You
> heard the entire interview. You decide which choice the

defendant made on February 17th, 2010.

Trial Transcript, Vol. IV., P. 564.

> MR. NELSON: You are entitled to consider what was said on the recording when the defendant said, you told me I'm not allowed to bring them in from Canada. You can consider that, according to the evidence, the defendant started buying these tusks from Mr. Logan in 2002 and didn't talk to Special Agent Guidera until four years later.
> Now, the defendant says there's not one shred of evidence, not one shred, that the defendant knew that these tusks were illegal. Well, if he thought they were illegal -- or if they thought -- if he thought they were legal, why couldn't he give a straight answer? Two hours and nine minutes, not once did he raise his voice or say, I didn't do what you're saying I did.
> MR. SMITH: Objection.
> THE COURT: I'll see counsel at sidebar.
> (At sidebar on the record.)
> MR. SMITH: Your Honor, again, I apologize. I think I've objected now more than I have in my entire career to a closing argument.
> The government has just commented on the burden of proof, and it has tried to shift that burden of proof to Mr. Zarauskas, and I object.
> THE COURT: Well, isn't it fair commentary if -- I mean, the statement was admitted into evidence, and it's a long statement. And isn't it fair commentary that he did not say -- what he didn't say, as well as what he did?
> MR. SMITH: I don't think so, Your Honor. I think --

THE COURT: Why?

MR. SMITH: Well, I think the statement speaks for itself, and I don't think the government can stand up during argument and highlight that the defendant never defended himself from the accusation.

THE COURT: Well, I don't think they're commenting on the Fifth Amendment. I don't take it that way.

MR. SMITH: Respectfully, I do, Your Honor.

THE COURT: You think they're commenting on the Fifth Amendment?

MR. SMITH: I think they're commenting -- I think they're saying that Mr. Zarauskas, by -- by not defending himself --

THE COURT: No, they're just commenting on the --

MR. SMITH: Oh, yes, I do think they're commenting on Fifth Amendment, yes, I do.

THE COURT: Why? Because they're just commenting on what he didn't say during the conversation, not on what he didn't say during trial.

MR. SMITH: I think that he's allowed to comment on what he did say during the conversation, not what he didn't say during the conversation.

MR. NELSON: Respectfully, Your Honor, I asked the same question on redirect examination, and it was allowed, through Special Agent Guidera.

MR. SMITH: Over objection, but --

THE COURT: Whether or not he -- what did you ask?

MR. NELSON: I asked, did he ever tell you, I didn't do this? Did he ever raise his voice? What was his body language? Those questions were allowed.

THE COURT: Right. But you objected to it.

MR. SMITH: I did. And that's different -- that piece of evidence is one thing. Now we're talking argument. Evidence is one thing. Now we're talking argument.

THE COURT: Right. I don't think that -- I mean, I don't think his comment on what was not said during the course of the conversation, which was admitted into evidence, is inappropriate argument. I don't think it's commenting on the Fifth Amendment. Your client has a right not to testify. I've instructed the jury on it. If you want me to reinstruct on that, I will.

But it seems to me he's commenting on the conversation that took place quite some time ago, not what happened during trial, and he is not -- he's not commenting on the -- your client's right to -- to assert the Fifth Amendment. If you want me to reinstruct on that, I will.

MR. SMITH: I would, Your Honor.

THE COURT: Okay. After your rebuttal, I'll reinstruct on the Fifth Amendment.

MR. NELSON: Your Honor, if I may, while we're here, so that we don't have to come back, I'm about to argue about what the defendant did and said to Special Agent Guidera during the consent search of his home, all of which is in evidence, all of which was raised in the closing, and I should be allowed to comment on it.

THE COURT: Well, that's in evidence.

MR. NELSON: Okay.

THE COURT: I don't know what you're going to say, but, you know, that's already in evidence.

MR. NELSON: Okay. Thank you.

(End of discussion at sidebar.)

Trial Transcript, Vol. IV., P. 589-592

The First Circuit and Supreme Court have overturned convictions based on prosecutorial comment upon the Defendant's right to remain silent.

> We begin with bedrock. The Fifth Amendment forbids any comment by the prosecutor on the defendant's exercise of the right to remain silent. See United States v. Robinson, 485 U.S. 25, 30, 108 S.Ct. 864, 868, 99 L.Ed.2d 23 (1988); Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). The proposition is more easily stated than applied. There is no bright line marking the precipice between a legitimate assessment of defense witnesses and an impermissible encroachment upon the accused's silence. Prosecutors who choose to explore such rugged terrain must take particular care not to comment upon, or call the jury's attention to, a defendant's failure to take the witness stand. See United States v. Lavoie, 721 F.2d 407, 408 (1st Cir.1983), cert. denied, 465 U.S. 1069, 104 S.Ct. 1424, 79 L.Ed.2d 749 (1984); Rodriguez-Sandoval v. United States, 409 F.2d 529, 531 (1st Cir.1969).
>
> Nonetheless, the road runs in both directions, leading to a rough mutuality of obligation. Defense attorneys have a responsibility to exercise reasonable vigilance and direct the trial court's immediate attention to perceived trespasses. See generally Ortiz, 966 F.2d at 715 (pointing out that "attorneys must usually bear the responsibility for preserving their points"); United States v. Griffin, 818 F.2d 97, 100 (1st Cir.) (discussing the "obligation to alert the district judge to error-in-the-making"), cert. denied, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). Although excessive summations may on rare occasions constitute plain error, redressable after the fact notwithstanding the absence of a contemporaneous objection, see, e.g., Arrieta-Agressot v. United States, 3 F.3d 525, 528 (1st Cir.1993), a criminal defendant who believes that a prosecutor's closing argument goes too far must usually object to the offending statements when and as they are uttered. See id. In this way, the prosecution can clarify ambiguities and correct mislocutions in a timely manner, and, if necessary, the trial judge can administer an immediate antidote, thereby curtailing any damage.  None of the appellants chose to testify at trial. Yet, the prosecutors courted trouble in both segments of their closing argument. Initially, one of them asked rhetorically:  Did anyone come into this courtroom and say what the

Government witnesses told you didn't happen? Did they? They attacked the witnesses, the DEA, the police officers, [and the government attorneys]....

On rebuttal, her colleague expanded upon (and twice repeated) the same theme: The United States introduced a lot of evidence during this trial, a lot of facts. And for the most part, there is no evidence in this case to show that what our witnesses said happened did not happen. That is, the defendants have done little or nothing to refute that evidence.   *  *  *  *  *  *  Ladies and gentlemen, we stand on the evidence, the overwhelming evidence, the evidence which, for the most part, the defendants have done absolutely nothing to refute....

It was only after the jury had been dismissed for the day that appellants, having sat silently throughout both segments of the prosecutors' summations, moved for a mistrial based in part on the quoted statements. The trial court denied the motion as untimely and sent the case to the jury the next morning. In the course of the charge, Judge Devine stated on five separate occasions that the government was responsible for carrying the burden of proof, that the defendants had the right to remain silent, and that no inferences 15 F.3d  1187   might be drawn from the defendants' election not to testify. [19]

In assaying the appropriateness of a prosecutor's remarks, context frequently determines meaning. See, e.g., United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985); United States v. Akinola, 985 F.2d 1105, 1111 (1st Cir.1993); United States v. Lilly, 983 F.2d 300, 307 (1st Cir.1992). Once the prosecutor's words are placed in context, we inquire whether "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Glantz, 810 F.2d 316, 322 (1st Cir.) (citations omitted), cert. denied, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987); see also Lilly, 983 F.2d at 307. [20] In borderline cases, the standard of review can figure importantly. When no contemporaneous objection appears of record, appellate review is for plain error. See Arrieta-Agressot, 3 F.3d at 528; United States v. Smith, 982 F.2d 681, 682 (1st Cir.1993); see also Fed.R.Crim.P. 52(b). And in the absence of a contemporaneous objection it seems fair to give the arguer the benefit of every plausible interpretation of her words. See United States v. Donlon, 909 F.2d 650, 656-57 (1st

Cir.1990); Glantz, 810 F.2d at 323; cf. Robinson, 485 U.S. at 31, 108 S.Ct. at 868 (noting that counsel's failure to object contemporaneously suggests that the arguer's statement is not ambiguous).

In this case, the prosecutors' remarks, taken in context and at face value, do not appear to constitute a comment on the accused's silence. The government's closing argument recounted the evidence against each defendant and, while admitting that certain prosecution witnesses possessed unsavory reputations and might profit by cooperation, the prosecutors urged the jury to find that those witnesses testified truthfully. Not surprisingly, defense counsels' summations played up the credibility theme, systematically besmirching the reliability of the government's witnesses, stressing internal inconsistencies, and outlining perceived conflicts between the testimony of different witnesses. Throughout, counsel paraded the cooperating witnesses' criminal records past the jury and made much of what those witnesses stood to gain by currying favor with the authorities.

Visualized against this backdrop, and assigning ordinary words their most natural meaning, the prosecution's argument that the defense had not successfully rebutted incriminating evidence seems not to be a comment on appellants' failure to testify but a comment about the credibility of the government's case. Arguments of this stripe do not trespass upon the accused's right to remain silent. See Lockett v. Ohio, 438 U.S. 586, 595, 98 S.Ct. 2954, 2959, 57 L.Ed.2d 973 (1978) (finding remarks that evidence was "unrefuted" and "uncontradicted" not to violate the Fifth Amendment); see also United States v. Pitre, 960 F.2d 1112, 1124 (2d Cir.1992) (upholding a prosecutor's comment that defendant had offered no competing explanation); United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988) (upholding a prosecutor's remark about defendant's failure to rebut evidence); United States v. Borchardt, 809 F.2d 1115, 1119 (5th Cir.1987) (similar). Within the bounds of fair play and due process, prosecutors are not barred from making powerful arguments.

To be sure, it is conceivable that a juror hearing the prosecutors' words might have interpreted them as a commentary on appellants' joint decision not to testify. But we cannot decide this case based on what amounts to a doomsday scenario. After all, an

appellate court is not at liberty to "infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or 15 F.3d 1188 that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Lilly, 983 F.2d at 307 (citation omitted); see also Robinson, 485 U.S. at 31, 108 S.Ct. at 868 (explaining "that an appellate court may [not] substitute its reading of ambiguous language for that of the trial court"). We are particularly unwilling to fish in the pool of ambiguity where the defendants did not contemporaneously object or otherwise bring the district court's attention to any potentially harmful circumlocution during the summations. Hence, we rule that the prosecutors' lack-of-refutation references did not require a mistrial.  B. Inflammatory Statements.

The second half of appellants' challenge to the government's final argument implicates what appellants characterize as four attempts to inflame the jury, viz., the prosecutors' suggestion that the jury could consider the effect on the community should the Sepulveda organization be able to continue in business; [21] two references to the "war on drugs"; [22] and a monition that feelings of pity should be subordinated to the call of civic duty. [23] Because defendants failed to object to these remarks when they were voiced, we review them only for plain error. See Smith, 982 F.2d at 682. Under that regime, we are constrained to stay our hand unless improper remarks "so poisoned the well that the trial's outcome was likely affected." United States v. Mejia-Lozano, 829 F.2d 268, 274 (1st Cir.1987); accord United States v. Mateos-Sanchez, 864 F.2d 232, 240-41 (1st Cir.1988). None of the quoted statements comprise plain error in the setting of this trial.      1. Protection of the Community. The first statement, see supra note 21, went too far: prosecutors overreach when they ask jurors to function as de facto vigilantes. Yet, importantly, cf. United States v. Lester, 749 F.2d 1288, 1301 (9th Cir.1984), there is no sign that the buzznacking about the Sepulveda organization resuming operations, while gratuitous, was part of a pattern of remarks specifically intended to inflame the jury. The reference was not prominently featured in the summation; rather, it was prefatory, serving to introduce a recitation of evidence that had been presented at the trial. When, as in this case, the evidence of defendants' guilt is strong, courts should be very reluctant to find plain error in misguided rhetoric. See United States v. Santana-Camacho, 833 F.2d 371, 373-74 (1st Cir.1987); Mejia-Lozano, 829 F.2d at 274; United States v. Capone, 683 F.2d

582, 586-87 (1st Cir.1982). So here: we think it is wildly improbable, given the weight of the evidence, that what we read as an isolated, relatively subdued appeal for law enforcement affected the trial's outcome. Consequently, the resumption-of-business remarks do not furnish 15 F.3d 1189 a basis for reversal. See United States v. Smith, 918 F.2d 1551, 1562-63 (11th Cir.1990); Hernandez, 891 F.2d at 527; United States v. Monaghan, 741 F.2d 1434, 1441 n. 30 (D.C.Cir.1984), cert. denied, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985).

US v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993).

Unlike the Defense in Sepulveda, the Defense in the instant case objected twice to prosecutorial comment on the Defendant's silence.

A prosecutor may not comment on a criminal defendant's failure to testify. Griffen v. California, 380 U.S. 609, 615 (1965). Comments on a defendant's post-arrest silence are addressed under the harmless error doctrine. See, e.g., United States v. Espinosa, 827 F.2d 604, 616 (9th Cir.1987); Lincoln v. Sunn, 807 F.2d 805, 811 (9th Cir.1987); United States v. Armstrong, 654 F.2d 1328, 1336 (9th Cir.1981), cert denied, 454 U.S. 1157 (1982). In United States v. Kennedy, 714 F.2d 968 (9th Cir.1983), this court applied the plain error doctrine where the defendant did not object to a comment by the prosecutor. Id at 976-77. In Kennedy the court stated that "... where the prosecutorial comment was a single isolated statement, where it did not stress any reference to guilt, and where it was followed by curative instructions, [it has] been reluctant to reverse." Kennedy 714 F.2d at 976.

In Greer v. Miller, 483 U.S. 756, 107 S.Ct. 3102 (1987), the Supreme Court ruled that a single question addressed to the defendant concerning his post-arrest silence did not amount to error under Doyle v. Ohio, 426 U.S. 610, where the trial court immediately sustained an objection to that question, the court advised the jury to disregard the question and the defense counsel did not request more curative instructions. Greer 483 U.S. at 766 and n. 5.

In Greer and its progeny, the key issue has been whether there was a timely objection, a request for a mistrial and curative instructions by the court. In the instant case, there was

a timely objection by the appellant and a request that the prosecutor be admonished. The trial court sustained the objection and did admonish the prosecutor. The defendant did not request curative instructions to the jury and the court did not advise the jury to disregard the question.

In light of the rulings in Kennedy and Greer, we do not find that the prosecutor's inquiry into the defendant's post-arrest silence was improper. The remaining question is whether the comment was prejudicial. [3] Where there is prosecutorial error of constitutional dimension, the government has the burden of establishing that it was harmless. It is harmless if we are "able to declare a belief that it was harmless beyond a reasonable doubt." E.g., Chapman v. California, 386 U.S. 18, 24 (1967). The question is whether, absent the prosecutor's comment on the defendants post-arrest silence, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty? Harrington v. California, 395 U.S. 250 (1969). Here the answer is yes.

The evidence against the appellant was substantial and overwhelming. The government's evidence left few questions unresolved. Several circumstances tended to positively show that the appellant did in fact commit the crimes of which he was convicted. Given the magnitude of the crimes committed and the clear evidence of guilt, we have no doubt that the jury would have found the defendant guilty beyond a reasonable doubt, regardless of the comment. As such, the comment amounted to harmless error and the district court's decision is affirmed.

<u>U.S. v. Bush</u>, 940 F.2d 669 (9th Cir. 1991)

We granted certiorari to review the Court of Appeals' determination that the prosecutor's question about the criminal defendant's post-arrest silence requires reversal of the conviction in this case. 479 U.S. 983 (1986).[3] We disagree with the Court of Appeals, and now reverse.

II    The starting point of our analysis is Doyle v. Ohio, 426 U.S. 610 (1976). The petitioners in Doyle were arrested for selling marijuana. They were given Miranda warnings, and [107 S.Ct. 3107] made no post-arrest statements about their involvement in the crime. They contended at trial that they had been  483 U.S.  762  framed by the

government informant. As part of his cross-examination, the prosecutor repeatedly asked petitioners why, if they were innocent, they did not give the explanation that they proffered at their separate trials to the police at the time of their arrest.[4] Defense counsel's timely objections to this line of questioning were overruled. Also over timely objections, the trial court allowed the prosecutor to argue petitioners' post-arrest silence to the jury. 426 U.S. at 613-615, and n. 5. On review, this Court found that the Miranda decision "compelled rejection" of the contention that such questioning and argument are proper means of impeachment. 426 U.S. at 617. The Court noted that post-arrest silence may not be particularly probative of guilt. We also found that, because Miranda warnings contain an implicit assurance "that silence will carry no penalty," 426 U.S. at 618, "it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence at the time of arrest and to insist that, because 483 U.S. 763  he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony," id. at 619 (quoting United States v. Hale, 422 U.S. 171, 182-183 (1975) (WHITE, J., concurring in judgment)). Accordingly, the Court in Doyle held that  the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment. 426 U.S. at 619.

This Court has applied the holding of Doyle in a number of subsequent cases. These later holdings confirm that  Doyle rests on "the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him, and then using his silence to impeach an explanation subsequently offered at trial."    Wainwright v. Greenfield, 474 U.S. 284, 291 (1986) (quoting South Dakota v. Neville, 459 U.S. 553, 565 (1983)). Thus, "absent the sort of affirmative assurances embodied in the Miranda warnings," the Constitution does not prohibit the use of a defendant's post-arrest silence to impeach him at trial. Fletcher v. Weir, 455 U.S. 603, 607 (1982). [107 S.Ct. 3108] See Jenkins v. Anderson, 447 U.S. 231, 240 (1980) ("[N]o governmental action induced [the defendant] to remain silent before arrest") (emphasis added); Anderson v. Charles, 447 U.S. 404, 408 (1980) (cross-examination respecting inconsistent post-arrest statements "makes no

unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent").

There is no question that Miller received the "implicit assurance" of Miranda warnings in this case. Thus, this prerequisite of a Doyle violation was met. But the holding of Doyle is that the Due Process Clause bars "the use for impeachment purposes" of a defendant's post-arrest silence. 426 U.S. at 619 (emphasis added). The Court noted that "`it does not comport with due process to permit the prosecution during trial to call attention to [the defendant's] silence.'"  483 U.S.  764  Ibid. (quoting United States v. Hale, supra, at 182-183 (WHITE, J., concurring in judgment)) (emphasis added). It is significant that, in each of the cases in which this Court has applied Doyle, the trial court has permitted specific inquiry or argument respecting the defendant's post-Miranda silence. See Jenkins v. Anderson, supra, at 233-234 (extended questioning and closing argument reference); Anderson v. Charles, supra, at 405-406 (questioning); Fletcher v. Weir, supra, at 603-604 (questioning); South Dakota v. Neville, supra, at 564 (admission of refusal to take blood-alcohol test); Wainwright v. Greenfield, supra, at 285, 287 (closing argument).     In contrast to these cases, the trial court in this case did not permit the inquiry that Doyle forbids. Instead, the court explicitly sustained an objection to the only question that touched upon Miller's post-arrest silence. No further questioning or argument with respect to Miller's silence occurred, and the court specifically advised the jury that it should disregard any questions to which an objection was sustained.[5] Unlike the prosecutor in Doyle, the prosecutor in this case was not "allowed to undertake impeachment on," or "permit[ted] . . . to call attention to," Miller's silence. 426 U.S. at 619, and n. 10. The fact of Miller's post-arrest silence was not  483 U.S.  765  submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no Doyle violation occurred in this case.[6]

III     Although the prosecutor's question did not constitute a Doyle violation, the fact [107 S.Ct. 3109] remains that the prosecutor attempted to violate the rule of Doyle by asking an improper question in the presence of the jury. This Court has recognized that prosecutorial misconduct may "so infect the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643

(1974). To constitute a due process violation, the prosecutorial misconduct must be "`of sufficient significance to result in the denial of the defendant's right to a fair trial.'" United States v. Bagley, 473 U.S. 667, 676 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)).

The Illinois Supreme Court, applying the analysis of Chapman v. California, 386 U.S. 18 (1967), found that the prosecutor's question was harmless beyond a reasonable doubt. 96 Ill.2d at 396, 450 N.E.2d at 327. We thus are convinced that it would find no due process violation under the facts of this case.[7] When a defendant contends that a prosecutor's 483 U.S. 766 question rendered his trial fundamentally unfair, it is important "as an initial matter to place the remark in context." Darden v. Wainwright, 477 U.S. 168, 179 (1986). See Donnelly v. DeChristoforo, supra, at 639 (determining whether "remarks, in the context of the entire trial, were sufficiently prejudicial to violate respondent's due process rights"). The sequence of events in this case -- a single question, an immediate objection, and two curative instructions -- clearly indicates that the prosecutor's improper question did not violate Miller's due process rights. The Illinois Supreme Court's determination that the properly admitted 483 U.S. 767 evidence at trial "was sufficient to prove defendant's guilt beyond a reasonable doubt," 96 Ill.2d at 396, 450 N.E.2d at 327, further supports this result.[9]

Greer v. Miller, 483 U.S. 756 (1987).

## CONCLUSION

The Prosecution's commentary on the Defendant's silence in the face of questioning was improper and violates the bright line established in Griffen. Like Griffen, and unlike, Sepulveda, the Defense vigorously objected on this intrusion into the Defendant's constitutional prerogatives. The prosecution's commentary was not just a one-time occasion but was repeated in different forms and fashions on four occasions. The Court should overturn the verdict and grant this motion for a new trial.

Dated this 2nd day of May, 2014.            /s/Stephen C. Smith
                                            Stephen C. Smith, Esq
                                            9 Central Street, Suite 209
                                            Bangor, Maine 04401
                                            Tele: 207-941-2395
                                            Email: scs@downeastlawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2014, I electronically filed the Defendant's Motion for New Trial with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Todd Mikolop, AUSA

todd.mikolop@usdoj.gov

Dated this 2nd day of May, 2014.            /s/Stephen C. Smith
                                            Stephen C. Smith
                                            Attorney for Defendant
                                            Smith Law Offices, PA
                                            9 Central Street, Suite 209
                                            Bangor, Maine 04401
                                            Tele: (207) 941-2395